FILED
United States Court of Appeals
Tenth Circuit

April 7, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

EDWARD MENDEZ,

     Defendant - Appellant.

No. 08-3162
(D.C. No. 07-CR-20065-JWL-2)
(D. Kan.)

ORDER AND JUDGMENT[*]

Before **KELLY**, **ANDERSON**, and **BRISCOE**, Circuit Judges.[**]

Defendant-Appellant Edward Mendez appeals his sentence. Mr. Mendez pled guilty to one count of conspiracy to distribute and to possess with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 846 ("Count I") and one count of possessing with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 ("Count II"). 1 R. Doc.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

1; 1 R. Doc. 59. The district court imposed a sentence of 240 months on each of Counts I and II, to run concurrently. 1 R. Doc. 117. The sentence was calculated as follows. The Presentence Investigation Report ("PSR") held Mr. Mendez accountable for 27.6 kilograms of cocaine, 3.175 kilograms of "ice methamphetamine," and 2.2 kilograms of marijuana. 3 R. at ¶ 45. Converted to its marijuana-equivalent, the total amount of drugs exceeded 30,000 kilograms of marijuana—resulting in a base offense level of 38 under U.S.S.G. § 2D1.1(c)(1). 3. R. at ¶ 45. Two offense levels were added under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm during drug transactions. 3 R. at ¶ 46. Pursuant to U.S.S.G. § 3E1.1, the PSR adjusted the offense level down three levels for admitting culpability, resulting in a total offense level of 37. 3 R. at ¶¶ 51, 54.

Mr. Mendez objected to the firearm enhancement, asserting that he had never carried a gun. 3 R. at ¶ 98. He also objected to the total amount of drugs attributed to him, claiming that he did not engage in certain of the transactions recited in the PSR. 3 R. at ¶ 103. After a hearing, the district court overruled both objections, 2 R. Doc. 141 at 182, and adopted the PSR without change, 3 R. attach. at 1 (Statement of Reasons). On appeal, Mr. Mendez argues that the district court erred in (1) calculating the amount of drugs that he should be accountable for and (2) enhancing his sentence for possession of a firearm. He also argues that (3) his sentence was unreasonable under the totality of the circumstances.

I.     Miscalculation of Drug Quantity

As to the miscalculation of the drug quantity, Mr. Mendez argues that the district court erred by finding that the methamphetamine attributed to him had an average purity of 60%. The government concedes that the purity average was inadvertently miscalculated. Because Mr. Mendez did not raise this issue below, our review is for plain error. United States v. Mendoza, 543 F.3d 1186, 1190-91 (10th Cir. 2008); see Fed. R. Crim. P. 52(b). Plain error is "(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights." United States v. Goode, 483 F.3d 676, 681 (10th Cir. 2007) (internal quotation marks omitted).

Mr. Mendez has satisfied this standard. The district court attributed 4½ pounds of methamphetamine to Mr. Mendez, based on the testimony of a Mr. Cardenas. 2 R. Doc. 141 at 184-85. The district court then converted the 4½ pounds of methamphetamine to its marijuana equivalent using a 60% purity ratio; this calculation resulted in a marijuana equivalent of 24,494.4 kilograms. Id. at 185-86. This was error. A review of the lab report entered into evidence shows that the correct purity average was actually 41%—which would lead to a marijuana equivalent of 16,737.8 kilograms. Aplt. Br. attach. at 1-2 (Laboratory Analysis Report). The error was also plain, because it was "clear and obvious at the time of the appeal." Morales-Fernandez v. INS, 418 F.3d 1116, 1124 (10th Cir. 2005). Finally, the error affected the substantial rights of Mr. Mendez

because it led the district court to calculate an incorrect base offense level.  Had

the district court used the proper average purity percentage, the base offense level

would have been 36, not 38.[1]  Therefore, the defect in the sentencing probably

altered the final sentence he received.  See United States v. Serrata, 425 F.3d 886,

917 (10 th Cir. 2005) ("In order to demonstrate that an error affected his

substantial rights, a defendant must show a reasonable probability that the defects

in his sentencing altered the result of the proceedings." (internal quotation marks

omitted)).  Accordingly, Mr. Mendez must be resentenced.

---

[1] The explanation provided by Mr. Mendez and accepted by the government adequately summarizes the proper calculation:

> The Court attributed four and one half pounds of methamphetamine to defendant. Each pound is 453.6 grams.  453.6 times four and one half equals 2,041.2 grams which when multiplied by the correct average purity, forty one percent, equals 836.89 grams of methamphetamine actual.  The conversion table at U.S.S.G. § 2D1.1 provides that each gram of methamphetamine actual is the equivalent of 20 kilograms of marijuana. 836.89 times 20 equals 16,737.8 kilograms of marijuana. The District Court found the cocaine in this case was the equivalent of 5,600 kilograms of marijuana.  Additionally, the District Court found [Mr. Mendez] distributed 90.72 kilograms of marijuana. Adding the marijuana equivalents of methamphetamine and cocaine in this case equal 22,337.80 kilograms of marijuana.  Adding the 90.72 kilograms of marijuana to this total yields a total drug quantity of 22,428.5[2] kilograms of marijuana or a level 36 under U.S.S.G. § 2D1.1.  Thus, the District Court's conclusion that [Mr. Mendez] should be accountable for over 30,000 kilograms of marijuana and thereby have a base offense level of 38 is erroneous. [Mr. Mendez's] guideline sentence is overstated by two levels because of this error.

Aplt. Br. 13-14; Aplee Br. 13.

II.     Firearm Enhancement

Mr. Mendez next argues that the district court erred by applying a firearm enhancement under U.S.S.G. § 2D1.1(b)(1).  "We review factual findings under U.S.S.G. § 2D1.1(b)(1) for clear error."  United States v. Topete-Plascencia, 351 F.3d 454, 458 (10th Cir. 2003) (internal quotation marks and brackets omitted).  "A finding is not clearly erroneous unless it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made."  In re Ford, 492 F.3d 1148, 1153 (10th Cir. 2007) (internal quotation marks omitted).

If a defendant is convicted for an offense involving drugs, the Guidelines provide a two level enhancement "[i]f a dangerous weapon (including a firearm) was possessed[.]"  U.S.S.G. § 2D1.1(b)(1).  The enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  Id. § 2D1.1 cmt. n.3. "The government bears the initial burden of proving possession by a preponderance of the evidence[.]"  United States v. Smith, 131 F.3d 1392, 1400 (10th Cir. 1997).  To meet this burden, the government need only show "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant."  United States v. Zavalza-Rodriguez, 379 F.3d 1182, 1185 (10th Cir. 2004) (internal quotation marks omitted).  If possession is established, the burden shifts to the defendant to show "that it is clearly improbable the weapon was connected

with the offense." Id. (internal quotation marks omitted).

The district court relied principally on two witnesses in making the factual determination that Mr. Mendez possessed a weapon in connection with the drug offenses. One witness (Mr. Klepac) testified that Mr. Mendez "would bring his .45 with him on a few occasions" when a drug deal occurred, 2 R. Doc. 141 at 51, and that Mr. Mendez would usually carry the semi-automatic pistol in his waistband, id. at 52-53. Furthermore, another witness (Mr. Hogan) testified that drug dealers "usually carry" weapons, id. at 80, though he did not observe Mr. Mendez carrying a weapon, id. at 89. The district court discounted Mr. Mendez's own testimony that he did not carry a weapon, finding his testimony not credible. Id. at 183, 188.

"The determination of a witness's credibility is a matter left to the sound discretion of the district court." Topete-Plascencia, 351 F.3d at 458; see United States v. Payton, 405 F.3d 1168, 1171 (10th Cir. 2005). Here, the district court found Mr. Klepac's testimony credible because of its specificity and because it was supported by Mr. Hogan's testimony. 2 R. Doc. 141 at 188-89. Moreover, the district court expressed skepticism regarding Mr. Mendez's testimony as an effort to minimize his involvement. Id. at 183. We normally defer to the district court's credibility determinations and we see no reason not to do so here. The testimony was sufficient to satisfy the government's burden to show possession by a preponderance of the evidence, and Mr. Mendez did not meet his burden of

then showing that it is clearly improbable the weapon was connected with the offense. Therefore, the district court's assessment of the firearm enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) was not clearly erroneous.

III.    Reasonableness of the Sentence

Finally, Mr. Mendez argues that his sentence was unreasonable because he "only admitted to being involved in the distribution of three kilograms of cocaine," and because the district court "relied upon the testimony of three convicted drug dealers to quadruple [his] sentence above and beyond what would be justified by the conduct [he] admitted." However, we need not reach this issue. "When a district court . . . err[s] in calculating the applicable Guidelines range, we must remand for resentencing, whether or not the district court's chosen sentence is substantively reasonable, unless we are able to ascertain that the court's calculation error was harmless." United States v. Todd, 515 F.3d 1128, 1135 (10th Cir. 2008); see United States v. Kristl, 437 F.3d 1050, 1054-55 (10th Cir. 2006) (per curiam). Here, the calculation error was not harmless, so we remand without determining the substantive reasonableness of the sentence.

Accordingly, we REMAND to the district court for resentencing in accordance with this order and judgment.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge